IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAVIER VALDIVIEZ and
LUZ HIGINIA RUELAS CORRAL,

      Plaintiffs,

v.                                    1:24-cv-00241-MV-JMR

BRIDGESTONE AMERICAS
TIRE OPERATIONS, LLC,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**
**AND ORDER DENYING MOTION FOR DISCOVERY**

THIS MATTER comes before the Court on plaintiffs' Motion to Remand (Doc. 6) and

defendant's related Motion for Discovery (Doc. 10). Defendant Bridgestone Americas Tire

Operations, LLC ("BATO") filed a response to the Motion to Remand, and plaintiffs filed a

reply. Docs. 9, 11. Plaintiffs did not respond to the Motion for Discovery. *See* Doc. 12 (Notice of

Briefing Complete). The Honorable Senior District Judge Martha Vázquez referred the Motion

to Remand to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if

warranted, and to perform any legal analysis required to recommend to the Court an ultimate

disposition of this case. Doc. 8. By local rule, I am assigned to decide the Motion for Discovery.

*See* D.N.M.LR-Civ. 73.1(a) ("For every civil case . . . a Magistrate Judge will be assigned as pre-

trial Magistrate Judge . . . to preside over all non-dispositive pre-trial matters in accordance with

FED. R. CIV. P. 72(a)."); *see also* 28 U.S.C. § 636(b)(1)(A). Having reviewed the parties'

submissions and the relevant law, I recommend that the Court GRANT plaintiffs' Motion to

Remand (Doc. 6) because removal was untimely. The Motion for Discovery (Doc. 10) is denied.

I.      **Background**

On March 28, 2016, plaintiffs filed this case in the First Judicial District Court of Santa

Fe County, New Mexico (hereinafter, the "state court"). Doc. 1-2. Plaintiffs' original complaint

named two defendants who are no longer named in the action: Ford Motor Company and Robert

B. Gibson Auto Sales ("Gibson Auto"). *Id.* In the state court action, BATO and Ford Motor

Company each filed motions to dismiss. Docs. 1-5, 1-15 at 2. The state court granted both

motions. Doc. 1-7 at 5–11. Plaintiffs immediately appealed the dismissals. Doc. 1-7 at 1–2.

While the case against the other two defendants was on appeal, the claims against Gibson Auto

were stayed. Doc. 9-3. During the appeal, plaintiffs settled with Ford Motor Company. Doc. 1-

14. Eventually, the New Mexico Supreme Court accepted certification from the New Mexico

Court of Appeals. Docs. 1-9, 1-10. However, the court later vacated its order accepting

certification and remanded the case to the New Mexico Court of Appeals for further review.

Doc. 1-11 (New Mexico Supreme Court order remanding to New Mexico Court of Appeals). On

October 24, 2023, the case was remanded to the state district court. Doc. 1-12 at 1–2 (New

Mexico Court of Appeals order remanding to state court). On February 9, 2024, plaintiffs

voluntarily dismissed Gibson Auto, following a monetary settlement. Doc. 1-14. Finally, on

March 8, 2024, BATO removed this case to federal court with itself as the only remaining

defendant. Doc. 1.

The basis of removal is diversity jurisdiction pursuant to 28 U.S.C. § 1332. Doc. 1 at 4.

The parties agree that the amount-in-controversy requirement is met. Doc. 9 at 6. Plaintiffs are

New Mexico citizens, and BATO is a citizen of Nevada and Tennessee. *Id.* at 4–5. Gibson Auto

was a New Mexico citizen. *Id.* at 4. Therefore, with Gibson Auto's dismissal, there is complete

diversity among the parties. *Ravenswood Inv. Co., L.P. v. Avalon Corr. Services*, 651 F.3d 1219, 1223 (10th Cir. 2011) ("[E]ach plaintiff must be diverse from each defendant to have what is known as complete diversity.").

## II.    Issues Before the Court

Plaintiffs argue that BATO's notice of removal was untimely because it was filed more than a year after the case was filed—in fact, it was filed eight years later. Doc. 6. BATO responds that the one-year bar does not apply because plaintiffs "acted in bad faith in order to prevent [the] defendant from removing the action." Doc. 9; *see also* 28 U.S.C. § 1446(c)(1).

Plaintiffs reply that "BATO has not properly placed 'bad faith' into issue by raising it in its Removal Notice." Doc. 11 at 2–4. Thus, BATO's bad faith argument is waived. *Id.* I disagree. BATO adequately put bad faith at issue in its notice of removal. *See* Doc. 1 at 7, ¶¶ 16–17. Although BATO did not use the words "bad faith," it stated: "Under Title 28, Section 1446(c)(1) of the U.S. Code, a defendant may remove a case more than one (1) year after the commencement of the action if the plaintiffs have acted with a purpose to prevent the defendant from removing the action." *Id.* BATO then cited and applied bad faith case law to the facts of this case. *Id.* at ¶¶17–18. With a pin cite to the relevant subsection of the U.S. Code and the application of bad faith case law, BATO has properly raised the issue of bad faith.[1]

As discussed in detail below, I nevertheless disagree that plaintiffs acted in bad faith to prevent removal. *Infra* §§ IV–V.

---

[1] Plaintiffs also argue that it is too late for BATO to allege that Gibson Auto was fraudulently joined. Doc. 6 at 4–6. BATO concedes that point, elaborating that "BATO did not base its removal on fraudulent joinder and . . . there is complete diversity among the Plaintiffs . . . and the sole Defendant . . . ." Doc. 9 at 5.

3

III.     **Law**

In general, a defendant must remove a civil action within thirty days after the defendant receives a copy of the "pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). However, in diversity jurisdiction cases, the case "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c)(1).

Neither the Supreme Court nor the Tenth Circuit have provided guidance on how to apply § 1446(c)(1)'s bad faith exception. *See, e.g.*, *Rowan v. State Farm Fire and Casualty Co.*, No. CIV-19-00205-PRW, 2019 WL 4166697 (W.D. Okla. Sept. 3, 2019) (noting the same). In the absence of such guidance, district courts have crafted various legal standards to determine whether a plaintiff has acted in bad faith to prevent removal. After surveying district courts nationwide, I see roughly three, somewhat overlapping, standards for determining whether a plaintiff acted in bad faith to prevent removal: the two-step *Aguayo* test, the intentional misconduct standard, and a multi-factor analysis.

The first test—and the one BATO urges this Court to apply—was outlined by this Court in *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225 (D.N.M. 2014) (Browning, J.). Other judges in this district and beyond have adopted the thoroughly reasoned *Aguayo* test. *See Hunt v. Siegel Grp. Nevada, Inc.*, No. 22-00278WJ-JFR, 2022 WL 1987726, at *6 (D.N.M. June 6, 2022) (Johnson, J.); *Neugebauer v. City of Davidson*, No. CIV-23-1201-R, 2024 WL 964446 (W.D. Okla. Mar. 6, 2024); *SAAC Investments, LLC v. Secura Ins.*, No. 4:22-CV-01174-NCC, 2023 WL 1070353 (E.D.Mo. Jan. 27, 2023); *Curell v. Bank of New York Mellon Tr. Co. Nat'l Ass'n*,

4

No. 6:19-cv-00045-DME, 2019 WL 13198054 (E.D. Okla. May 21, 2019); *Kamal-Hashmat v. Loews Miami Beach Hotel Operating Co.*, No. 16-cv-24864-GAYLES, 2017 WL 433209 (S.D. Fla. Jan. 27, 2017).

Still, other courts have rejected *Aguayo* and instead adopted an "intentional misconduct" test to assess whether plaintiff acted in bad faith to prevent removal. *See Becker v. Ford Motor Co.*, No. 1:20-CV-281-TAV-CHS, 2021 WL 4221618 (E.D. Tenn. Sept. 15, 2021) (collecting cases); *Hopkins v. Nationwide Agribusiness Ins. Co.*, No. 4:18-cv-00315-KOB, 2018 WL 3428610 (N.D. Ala. July 26, 2018); *Comer v. Schmitt*, No. 2:15-cv-2599, 2015 WL 5954589 (S.D. Ohio Oct. 14, 2015); *Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433 (W.D. Ky. Dec. 5, 2014).

 Finally, other courts have analyzed several enumerated factors to determine whether a plaintiff has acted in bad faith to prevent removal. *H&B Ventures, LLC v. State Auto Property and Casualty Ins. Co.*, 686 F. Supp. 3d 846, 851 (E.D. Mo. 2023) (collecting cases); *GeoSierra Environmental, Inc. v. Nautilus Ins. Co.*, No. 2:22-cv-00505-TL, 2023 WL 2632515 (W.D. Wash. Mar. 24, 2023); *Herrington v. Nature Conservancy*, No. CV 21-240-GW-GJSx, 2021 WL 942749 (C.D. Cal. Mar. 11, 2021); *Heacock v. Rolling Frito-Lay Sales, LP*, No. C16-0829-JCC, 2016 WL 4009849 (W.D. Wash. July 27, 2016). The courts using a multi-factor analysis do not always use the same list of factors; although, the various factors tend to be significantly similar.

Out of an abundance of caution, I review this matter under all three standards and come to the same result—there is no basis for finding that plaintiffs acted in bad faith.

**IV.     Under the *Aguayo* test, plaintiffs did not act in bad faith.**

Under *Aguayo*, plaintiffs did not act "in bad faith in order to prevent a defendant from

removing the action." *See* § 1446(c)(1). In *Aguayo*, this Court developed the following two-step

test:

> First, the Court inquires whether the plaintiff actively litigated against the removal
> spoiler in state court: asserting valid claims, taking discovery, negotiating
> settlement, seeking default judgments if the defendant does not answer the
> complaint, et cetera. Failure to actively litigate against the removal spoiler will be
> deemed bad faith; actively litigating against the removal spoiler, however, will
> create a rebuttable presumption of good faith. Second, the defendant may attempt
> to rebut this presumption with evidence already in the defendant's possession that
> establishes that, despite the plaintiff's active litigation against the removal spoiler,
> the plaintiff would not have named the removal spoiler or would have dropped the
> spoiler before the one-year mark but for the plaintiff's desire to keep the case in
> state court.

*Aguayo*, 59 F. Supp. 3d at 1262–63.

Plaintiffs can satisfy the "active litigation" step,

> even if he or she did not take discovery if he or she engaged in any other form of
> active litigation, such as seeking a default judgment against a removal-spoiling
> defendant who does not respond to the complaint within the required timeframe or
> settling the case for more than nominal damages with a removal spoiler from whom
> the defendant has not yet taken discovery.

*Id.* at 1275. At the second step,

> The defendant may attempt to rebut this presumption with direct evidence of bad
> faith, but is limited to the evidence that he or she has on hand: the defendant may
> not take discovery in federal court or call witnesses at a hearing to develop this
> rebuttal . . . .

*Id.*

Under the first *Aguayo* step, plaintiffs are at first entitled to a rebuttable presumption of

good faith. *See id.* at 1262–63. "Active litigation," as described in *Aguayo,* is a low bar. *Id.* at

1275 (The Court "takes a wide-open view of what constitutes active litigation; any one form of

active litigation satisfies the standard's first step."). Defendants are correct that "*Aguayo* places the initial burden of demonstrating 'active litigation' on the Plaintiff," however, that burden is light. Doc. 9; *see also Aguayo*, 59 F. Supp. 3d at 1275 ("**If the plaintiff can establish** that he or she actively litigated against the removal spoiler, the plaintiff is entitled to a rebuttable presumption of good faith.") (emphasis added). Engaging in more than a "mere scintilla of litigation against the removal spoiler" will satisfy the first step. *Aguayo*, 59 F. Supp. 3d at 1277.

Here, plaintiffs have met their burden at the first step by showing that they actively litigated against Gibson Auto, albeit minimally, by engaging in settlement negotiations. Plaintiffs clarify that their settlement with Gibson Auto resulted from negotiations. Doc. 6 at 8. At least some negotiations occurred while the case was on appeal. *Id.* ("[I]t is important to note all parties entertained settlement during the appellate process."). And eventually, plaintiffs settled with Gibson Auto in 2023—seven years after the case was filed. Doc. 11 at 5. Plaintiffs note that the settlement was monetary and not nominal. *Id.* In February 2024, presumably after finalizing the terms and receiving payment, plaintiffs voluntarily dismissed Gibson Auto with prejudice. Doc. 1-14. Plaintiffs' settlement negotiations are sufficient to show that plaintiffs were actively litigating against Gibson Auto. *See Marquez v. Baca*, No. 23-311 MV/GBW, 2023 WL 9101614, at *2 (D.N.M. Dec. 15, 2023) (recommending remand when plaintiff did not seek default judgment or serve discovery on a removal spoiling defendant because "[p]laintiff actively worked to reach a settlement with [the removal spoiling defendant] and his insurer"); *see also Bristol v. Ford Motor Co.*, No. 4:16–cv–01649–JAR, 2016 WL 6277198, *3–4 (E.D. Mo. Oct. 27, 2016) (finding that plaintiff actively litigated against the removal spoiler, using *Aguayo*, by

7

engaging in several months of settlement negotiations despite not engaging in discovery, depositions, or responding to a motion for summary judgment).

Contextually, it is important to note that the timeline of this case, while long, is not unusual. BATO is correct that plaintiffs never served discovery on Gibson Auto nor did they engage in motion practice with Gibson Auto. *See* Doc. 1-15. But, as plaintiffs point out, they were occupied by "fighting two difficult case dispositive motions," filed by BATO and Ford Motor Company. Doc. 6 at 8. Given the underlying theory of liability—that "defects in design and manufacturing of both [plaintiffs'] Ford Ranger and its Bridgestone tires" caused a motor vehicle crash—it is obvious that the car manufacturer (Ford) and the tire manufacturer (BATO) were more principal defendants than the car dealership (Gibson Auto). That is not to say that plaintiffs did, or did not, have a valid claim against Gibson Auto.[2] The state court's order dismissing BATO was on appeal for roughly six years. *See* Doc. 6 at 1 ("[T]his case has essentially been in a holding pattern for the past six (6) to seven (7) years while Plaintiffs appealed the improper dismissal of Defendant BATO based on an alleged lack of personal jurisdiction."). It is not unreasonable for the plaintiffs to wait until the parties in a case are finalized before serving discovery. While perhaps plaintiffs' pursuit of Gibson Auto could have been more zealous, it was perfectly reasonable given the procedural course.

In a footnote in the cross Motion for Discovery, "BATO objects to any attempts by Plaintiffs to offer [evidence of having engaged in active litigation with Gibson Auto] for the first time on reply." Doc. 10 at 2 n.1 (citing *Otero v. Nat'l Distrib. Co.*, 627 F. Supp. 2d 1232, 1239

---

[2] Because BATO concedes that it is not pursuing a fraudulent joinder theory, it is not necessary to assess whether plaintiffs had a valid claim against Gibson Auto.

(D.N.M. 2009). It is not clear that the footnote of a separate, though related, motion is the appropriate place to raise such an objection. Nonetheless, BATO's objection is overruled. Any additional context plaintiffs provided in the reply to the Motion to Remand was squarely within the bounds of what was argued in the initial motion. For example, the reply is when the Court first learns that plaintiffs settled with Gibson Auto in 2023. Doc. 11 at 5 ("Plaintiffs' counsel affirmatively represent that the settlement came much later [than the one-year anniversary of the case], in 2023."). However, in the original motion, plaintiffs do not provide a date and simply argue that they actively litigated against Gibson Auto because "[p]laintiffs were negotiating a settlement, and did ultimately secure a settlement with Defendant Gibson." Doc. 6 at 8. In the response, BATO then complains, "Plaintiffs here have failed to provide any specific information about *when* the alleged settlement discussions with Gibson Auto first took place." Doc. 9 at 9 (emphasis in original). Plaintiffs should not now be penalized for answering a question in their reply brief that BATO asked in its response. The reply only gives more context to matters put at issue in the original motion and challenged in the response, as is proper for a reply. *See James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 905 (D. Kan. 2021) ("A reply serves its purpose when it responds 'to matters placed in issue by the [r]esponse,' rather than providing new legal arguments. . . .") (citation and quotation omitted). Thus, I will consider the clarifying information about plaintiffs' settlement with Gibson Auto introduced in the reply.

Under the second step of *Aguayo*, BATO provides no evidence to rebut the presumption that plaintiffs were acting in good faith. *See Aguayo*, 59 F. Supp. 3d at 1262–63. The *Aguayo* test requires a "smoking gun or close to it," which BATO simply does not have. *Id.* at 1277.

9

BATO's sole argument, as to step two, is that plaintiffs "made an adoptive admission that their claims against Gibson Auto would be 'futile' absent BATO's joinder." Doc. 9 at 15. When Gibson Auto filed an unopposed Motion to Stay the case, Gibson Auto wrote, "a stay of discovery is appropriate while the New Mexico Court of Appeals considers Plaintiffs' appeal because discovery during the interim could be futile." Doc. 9-3 at 2. BATO argues that this sentence means that plaintiffs "'ha[d] ***no intention of pursuing judgment*** against the non-diverse defendant,' which is direct evidence of bad faith." Doc. 9 at 15 (quoting *Keller Logistics*, 391 F. Supp. 3d at 779) (emphasis in original). I disagree. Plaintiffs conceded that their claims against Gibson Auto "could be futile," if BATO was not joined, not that they would be. Doc. 9-3 at 2. This sentence simply does not amount to a concession.

BATO cannot rebut plaintiffs' presumption of good faith under *Aguayo*. Therefore, the matter must be remanded under this test.

## V.   Under the intentional misconduct test, as well as the various multi-factor analyses, plaintiffs did not act in bad faith.

Under the intentional misconduct test and the various multi-factor analyses, BATO again fails to show that plaintiffs acted in bad faith to prevent removal. Here, it is unnecessary to outline the specifics of both the intentional misconduct standard and the several versions of a multi-factor analysis that district courts have used to determine whether plaintiffs acted in bad faith. Under either analysis, the burden of proof is on the removing defendant. *Becker*, 2021 WL 4221618, at *2 ("Defendant carries the 'high burden' of demonstrating plaintiffs' bad faith."); *H&B Ventures, LLC*, 686 F. Supp. 3d at 853 (remanding because defendant "failed to meet its burden in showing that the bad-faith exception under § 1446(c)(1) applies"); *GeoSierra Environmental, Inc.*, 2023 WL 2632515, at *2 ("[D]istrict courts in the Ninth Circuit have stated

that 'defendants face a high burden to demonstrate that a plaintiff acted in bad faith to prevent removal.'") (quotation and citation omitted). Notably, courts disagree as to the evidentiary standard a removing party must meet to demonstrate bad faith, that is, whether by a preponderance of the evidence, by clear and convincing evidence, or something different. *See, e.g.*, *Keller Logistics Group, Inc. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 778 (N.D. Ohio 2019) (acknowledging the potential applicable evidentiary standards of "clear and convincing" and "preponderance," but declining to decide which is applicable); *Forth v. Diversey Corp.*, No. 13–CV–808–A, 2013 WL 6096528, at *2 (W.D.N.Y. Nov. 20, 2013) (using the clear and convincing standard used for bad faith claims in other contexts); *Holman v. Coventry Health & Life Ins. Co.*, No. CIV-17-0886-HE, 2017 WL 5514177, at *2 (W.D. Okla. Nov. 17, 2017) (applying *Aguayo*).

Regardless of the evidentiary standard, BATO has not met even a minimal burden under the latter tests. Indeed, BATO fails to allege any facts showing that plaintiffs acted in bad faith to prevent removal. BATO alleges that plaintiffs did not "actively litigate[]" against Gibson Auto. Doc. 9 at 12. But BATO summarily precludes any possibility of a good faith explanation for plaintiffs' decision not to spend more time litigating against Gibson Auto, such as awaiting the outcome of the appeal, conserving resources by only conducting discovery after the parties and claims were certain, attorneys being distracted by other matters, or other common reasons for delaying litigation. Yet, plaintiffs explain that they were "focused on jurisdictional discovery in responding to the two motions to dismiss. . . . [T]hese were case dispositive issues, which naturally took priority over basic discovery against a defendant without a motion to dismiss (based on complex legal grounds)." Doc. 6 at 7. BATO dismisses plaintiffs' assertions that they were involved in settlement negotiations and ultimately secured a settlement with Gibson Auto.

11

*Id.* at 6–8. BATO also does not allege that plaintiffs intentionally waited to dismiss Gibson Auto to avoid the one-year limitation provided for in 18 U.S.C. § 1446(c)(1). Under the frameworks placing the initial burden on BATO to show plaintiffs engaged in bad faith, BATO fails to meet its burden.

Instead of explaining how plaintiffs acted in bad faith, BATO focuses on shifting the burden of proof to plaintiffs. Doc. 9 at 11–14. When discussing "[o]ut-of-[c]ircuit [a]uthorities," BATO incorrectly pushes the burden of proof onto plaintiffs. *Id.* BATO cites a Central District of California case that states: "[O]nce the removing party has made a *prima facie* case of having satisfied all procedural requirements, the burden shifts to the party seeking remand to offer evidence rebutting that *prima facie* case." *Jimenez v. Lao*, No. 18-3574-DMG (JCx), 2018 WL 3388497 (C.D. Cal. July 11, 2018) (quoting *Parker v. Brown*, 570 F. Supp. 640, 643 (S.D. Ohio 1983)). Then, BATO argues that it made a *prima facie* case that plaintiffs acted in bad faith, so the burden shifts to plaintiffs to disprove the allegation. Doc. 9 at 12. However, *Jimenez* and *Parker* do not apply to or involve § 1446(c)(1) bad faith claims. Courts, applying either the intentional misconduct test or the various multi-factor analyses for § 1446(c)(1) claims, agree that the burden of proving bad faith is squarely on the removing party—as opposed to shifting to the non-removing party to disprove after the removing party makes a prima facie case. *See, e.g.*, *Becker*, 2021 WL 4221618, at *2; *H&B Ventures, LLC*, 686 F. Supp. 3d at 853; *GeoSierra Environmental, Inc.*, 2023 WL 2632515, at *2.

Next, BATO argues that "the one-year deadline for removal does not apply when a plaintiff fails to serve discovery on a forum defendant and voluntarily dismisses all claims against the forum defendant shortly after the one-year mark." Doc. 9 at 11; *see also Hoyt v. Lane*

*Construction Corp.*, 927 F.3d 287, 292–93 (5th Cir. 2019) (affirming a finding of bad faith when plaintiff voluntarily dismissed the forum defendant without compensation two days after the one-year deadline); *Lawson v. Parker Hannifin Corp.*, No. 4:13-CV-923-O, 2014 WL 1158880, at *6 (N.D. Tex. Mar. 20, 2014) (finding bad faith when plaintiff filed notice of non-suit as to the forum defendant without monetary compensation three months after the one-year deadline). However, that is not the case here. Gibson Auto was not dismissed "shortly" after the one-year anniversary of the case, it was dismissed seven years later and only following a non-nominal, negotiated settlement.

BATO's comparison of this matter to cases where plaintiffs admitted that they delayed settling with a forum defendant to avoid removal is also inapt. *See* Doc. 9 at 6–11 (citing *Keller Logistics Group*, 391 F. Supp. 3d at 779; *Hiser*, 2014 WL 6885433, at *3–4; *Comer*, 2015 WL 5954589, at *4). In *Keller Logistics*, *Hiser*, and *Comer*, the respective plaintiffs admitted to either keeping a forum defendant solely to prevent removal or delaying consummating settlement to avoid removal. *Keller Logistics Group*, 391 F. Supp. 3d at 779; *Hiser*, 2014 WL 6885433, at *3–4; *Comer*, 2015 WL 5954589, at *4. There is no such admission, or even any evidence of such, in this case.

BATO consistently points to information that it claims plaintiffs have not provided. *See, e.g.*, Doc. 9 at 4–5 ("Plaintiffs provide no information . . . . Plaintiffs do not state . . . . Plaintiffs do not state . . . . Plaintiffs fail to explain . . . . Plaintiffs have provided no explanation . . . ."). However, using these tests, the burden is not on plaintiff. *But see Aguayo*, 59 F. Supp. 3d at 1262; *infra* § IV. It is on BATO. BATO does not make a facial showing that plaintiffs kept Gibson Auto as a party in this case in bad faith. Under the intentional misconduct test and the

various multi-factor analyses for determining § 1446(c)(1) bad faith, BATO fails to meet its burden. The matter must be remanded.

## VI.   Order denying BATO's Motion for Discovery.[3]

BATO also moves this Court "to allow limited discovery on the 'active litigation' prong of the two-step test adopted in *Aguayo*." Doc. 10 at 1. Specifically, BATO "requests an opportunity to conduct limited discovery on the terms and circumstances of [plaintiffs'] settlement," with Gibson Auto. *Id.* at 2.

The *Aguayo* Court stated, "[a]t [the second step of the *Aguayo* test], the defendant may attempt to rebut the good-faith presumption with evidence of the plaintiff's subjective bad faith, but the defendant may only use evidence already in his or her possession, and **will not receive additional discovery** or an evidentiary hearing to develop the bad-faith argument." *Aguayo*, 59 F. Supp. 3d at 1265 (emphasis added). BATO attempts to parse this prohibition on discovery as applying only to the second prong of the *Aguayo* test. Doc. 10 at 4 ("The *Aguayo* court's concerns about jurisdictional discovery are also not implicated, as BATO is not seeking discovery to support the second step of the test—direct evidence of bad faith."). BATO, therefore, requests discovery only on the first step of the *Aguayo* test—the active litigation prong. However, BATO misreads *Aguayo*. As BATO notes in its response to the motion to remand, plaintiffs—not BATO—have the burden to show that they engaged in active litigation

---

[3] Section VI is an order on the non-dispositive Motion for Discovery (Doc. 10). Therefore, the standard of review for this section differs from the rest of this filing. Pursuant to FED. R. CIV. P. 72(a), a district judge reviewing Section VI would look to see if the order is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a) ("Nondispositive Matters"). As with the entirety of the filing, parties may still "serve and file objections to the order within 14 days after being served." *Id.* And a "party may not assign as error a defect in the order not timely objected to." *Id.*; *see* § *infra* VIII for the applicable standard of review for the remainder of this filing.

with the removal spoiler under *Aguayo*'s first step. Doc. 9 at 12. It is only in the second step that BATO gets the opportunity to discredit plaintiffs with evidence. *Aguayo*, 59 F. Supp. 3d at 1275 ("The defendant may attempt to rebut this presumption with direct evidence of bad faith, but is limited to the evidence that he or she has on hand: the defendant may not take discovery in federal court or call witnesses at a hearing to develop this rebuttal. . . .). Using the *Aguayo* test, the defendant has no evidentiary role in the first step, which is determining whether the plaintiff actively litigated against the removal spoiler.

Notably, the cases that BATO cites to support this request for discovery do not apply the *Aguayo* test. Doc. 10 at 3 (citing *Stroman v. State Farm Fire and Cas. Co.*, No. C18-1297 RAJ, 2019 WL 1760588, at *3–4 (W.D. Wash. Apr. 22, 2019) and *Valderramos v. Giti Tire (USA) Ltd.*, No. 20-CV-62676, 2021 WL 1520700, at *4 (S.D. Fla. Mar. 8, 2021)). In *Stroman*, the Western District of Washington allowed discovery on the discrete issue of the timing of settlement. *Stroman*, 2019 WL 1760588, at *4. Ultimately, however, the *Stroman* Court applied a multi-factor analysis to determine whether plaintiffs acted in bad faith. *Stroman v. State Farm Fire and Cas. Co.*, No. C18-1297 RAJ, 2019 WL 2578610, at *1 (W.D. Wash. June 24, 2019). In *Valderramos*, the Southern District of Florida allowed more detailed discovery on the terms of settlement. *Valderramos*, 2021 WL 1520700, at *4. And like in *Stroman*, the *Valderramos* court applied a multi-factor analysis to determine whether plaintiffs acted in bad faith. *Id.* BATO's cited law does not support permitting discovery in the *Aguayo* context.

BATO's request for discovery is prohibited under the *Aguayo* test. Therefore, BATO's Motion for Discovery based on *Aguayo* is denied.

**VII.    Plaintiffs are not entitled to a fee or costs award.**

Plaintiffs request fees and costs for filing their motion to remand. Doc. 6 at 12. BATO

opposes this request. Doc. 9 at 15–17. I find that fees and costs are not warranted.

Section 1447(c) states, "An order remanding the case may require payment of just costs

and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.

§ 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c)

only where the removing party lacked an objectively reasonable basis for seeking removal."

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, BATO had an objectively reasonable basis for seeking removal. As the *Aguayo* test

originated in this Court, it was not unreasonable to expect this Court to apply it. Based on the

state court docket sheet, it did not appear that plaintiffs actively litigated against Gibson Auto.

Presumably, BATO was not privileged to plaintiffs' settlement negotiations with Gibson Auto.

As such, it was not unreasonable for BATO to have believed that plaintiffs did not actively

litigate against Gibson Auto. *See Bristol*, 2016 WL 6277198, at *5 (declining to award fees after

granting motion to remand for largely the same reasons).

Therefore, I recommend declining to award attorney fees.

**VIII.    Recommendation**

BATO removed this action eight years after it was filed, alleging that plaintiffs kept a

forum defendant in the action in bad faith to prevent removal. Regardless of which legal test

applies, I recommend that the Court find that plaintiffs did not act "in bad faith in order to

prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1); *supra* § IV–V.

Therefore, I recommend the Court GRANT plaintiffs' Motion to Remand (Doc. 6) and

16

REMAND this matter because it was removed "more than 1 year after commencement of the

action." *Id.* I further DENY BATO's Motion for Discovery (Doc. 10). *Supra* § VI.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.**

---

JENNIFER M. ROZZONI
United States Magistrate Judge

17